IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MILES HORTON,

    Petitioner,

v.

JUDGE DAVID TYACK, et al.,

    Respondents.

CASE NO. 2:15-CV-02999
JUDGE MICHAEL H. WATSON
Magistrate Judge Elizabeth P. Deavers

## REPORT AND RECOMMENDATION

Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition* (ECF No. 1), Respondent's *Return of Writ* (ECF No. 8), Petitioner's *Traverse* (ECF No. 17), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Facts and Procedural History

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> In the early morning hours of January 21, 2013, Sergeant Tim Myers of the Columbus Police Department was driving his police car north on High Street in the Short North area of Columbus, Ohio. Sergeant Myers encountered a car that was stopped in his lane. Sergeant Myers was required to stop. He observed people getting into the car and then the car proceeded northbound on High Street. Because the car impeded Sergeant Myers' ability to drive in the lane, he decided to pull the car over for violating Columbus City Code 2133.04(A) (impeding traffic) <sup>FN</sup>
>
> > FN. That charge is not at issue in this appeal
>
> The car, driven by appellant, pulled into a parking lot. Sergeant Myers approached the car and made contact with appellant. Sergeant Myers noticed that appellant's eyes were glassy and bloodshot. He also smelled an odor of alcoholic

beverages inside the car.  Sergeant Myers suspected that appellant may have been impaired, so he asked him to recite the alphabet, starting at the letter D and ending at the letter X.  Appellant attempted to do so but started with the letter E and said the letter U twice.  At that point, Sergeant Myers asked appellant to exit the car to determine whether the alcohol smell was from appellant or from other people in the car.  Once outside the car, Sergeant Myers could still smell a moderate odor of alcohol coming from appellant.  Sergeant Myers asked appellant how many drinks he had that night.  Appellant told him that he had two drinks two hours earlier and that he had also taken some anti-anxiety medicine.  Sergeant Myers suspected that appellant was driving impaired.

At some point during the encounter, Columbus Police Officers William Scott and Jill Woolley arrived on the scene to assist Sergeant Myers.  Sergeant Myers informed the officers of his observations of appellant before turning appellant over to them.  Officers Scott and Woolley performed field sobriety tests ("FST") on appellant.  Both officers also thought that appellant's eyes were glassy and bloodshot and that he smelled of alcohol.

Officer Scott first asked appellant if he would take a portable breath test ("PBT").  He declined but agreed to perform other FSTs.  Officer Scott first performed the horizontal gaze nystagmus test ("HGN").  During the test, Officer Scott observed six out of six clues indicating to him that appellant was impaired.  Officer Woolley then performed two other FSTs: the walk-and-turn and the one-leg stand.  Although appellant passed both of these tests, exhibiting only one clue on each test, Officer Woolley observed him swaying during the one-leg stand.  Following these tests, appellant was arrested for OVI and taken to police headquarters.  Officer Scott then performed an alcohol breath test on appellant.  Appellant's test result was .108, which is over the legal limit.

As a result of these events, appellant was charged with two counts of operating a vehicle while under the influence in violation of Columbus City Code 2133.01(A)(1)(a) ("OVI impaired") and 2133.01(A)(1)(d) ("OVI per se").[FN]  Appellant entered a not guilty plea to the charges and proceeded to a jury trial.

> FN. OVI charges are referred to as either impaired or per se.  *See State v. Brand*, 157 Ohio App.3d 451¶11-12 (1st Dist. 2004).

Before trial, appellant filed a motion to suppress the results of the FSTs he performed during the traffic stop as well as the results of the alcohol breath test he took while at police headquarters.  At the motion hearing, appellant argued that the results of the alcohol breath test had to be suppressed because Officer Scott did not properly renew his operator's permit to conduct the test and that the police did not have probable cause to arrest him. The trial court overruled appellant's motion.

> At trial, the officers testified to the above version of events. The video of the traffic stop, which included the walk-and-turn and the one-leg stand FSTs but not the HGN test, was also played to the jury. The jury ultimately acquitted appellant of the OVI impaired charge but found him guilty of the OVI per se charge. The trial court sentenced him accordingly . . . .
>
> Appellant appeals his conviction and sentence and assigns the following errors:[1]
>
> > . . . THE TRIAL COURT VIOLATED APPELLANT'S RIGHT OF CONFRONTATION, RIGHT TO PRESENT A COMPLETE DEFENSE AND RIGHT TO HAVE THE JURY DETERMINE HIS GUILT BEYOND A REASONABLE DOUBT BASED UPON ALL RELEVANT EVIDENCE BY PROHIBITING CROSS-EXAMINATION OF THE STATE'S WITNESS REGARDING HOW THE BREATH MACHINE WORKS AND REGARDING THE SPECIFIC BREATH TESTING DEVICE USED TO TEST HIS BREATH AND REGARDING MATTERS THAT COULD HAVE CAUSED HIS SPECIFIC TEST RESULT TO BE LESS THAN ONE HUNDRED PERCENT ACCURATE . . . .

*Columbus v. Horton*, No. 13AP-966, 2014 WL 5306839, at *1-2 (Ohio App. 10th Dist. Oct. 16, 2014). On October 16, 2014, the appellate court affirmed the judgment of the trial court. *Id.* On May 20, 2015, the Ohio Supreme Court declined to exercise jurisdiction over Petitioner's subsequent appeal. *Columbus v. Horton*, 142 Ohio St. 3d 1465 (2015).

Through counsel, on November 16, 2015, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Although Petitioner is not currently in custody, this Court nevertheless has jurisdiction because the trial court stayed Petitioner's sentence pending the outcome of his state court appeal and these federal habeas proceedings. (ECF No. 8-3, Page ID # 602, 787). *See also Miskel v. Karnes*, 397 F.3d 446, 450 (6th Cir. 2005) (citing *McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir. 1987) and *Hensley v. Municipal Court*, 411 U.S. 345, 348-49 (1973)). Petitioner challenges his conviction on the charge of OVI per se in violation of Columbus City Code 2133.01(A)(1)(D). Petitioner's asserts that he was denied the right to

---

[1] Petitioner raised two additional assignments of error in the state appellate court but does not raise them in his habeas petition.

present a defense and to confront the witnesses against him when the trial court impermissibly prohibited him from cross examining Officer Scott about the potential impact that his flu symptoms and cell phone may have had on his breath test results. Petitioner further asserts that this evidence would have demonstrated that his flu symptoms and cell phone could have decreased the breath test's reliability and accuracy. Respondent contends that this claim lacks merit.

## Standard of Review

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court describes the AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasizes that federal courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow,* 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

Under the AEDPA, the factual findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). "Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding").

The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49. In order for a federal court to find that a state court's application of Supreme Court precedent was unreasonable, "the state court's application must have been 'objectively unreasonable,' not just incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21, (2003) (internal citations omitted) (citing *Williams v. Taylor*, 529. U.S. at 409); *see also Harrington v. Richter*, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness

5

of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004))). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (" '[O]ur focus on the 'unreasonable application' test under Section 2254(d)) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.' " (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before the state court at the time that it rendered its decision. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011). Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 182. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Id*. at 181.

**Merits**

The state appellate court analyzed and rejected Petitioner's claim as follows:

Appellant argues that the trial court impermissibly limited his right to cross-examine Officer Scott regarding the reliability of the chemical breath test he administered. Specifically, the trial court prohibited questions relating to: (1) whether appellant had the flu on the night of his arrest and whether the flu would have caused a fever; and (2) whether appellant's cell phone was in the room during the breath test. Appellant contends that both of these facts could have impacted his particular test results. . . .

Ohio has legislatively resolved the question of the general reliability of tests for blood alcohol content. *State v. Vega*, 12 Ohio St.3d 185, 188 (1984), citing R.C. 4511.19; *State v. Luke*, 10th Dist. No. 05AP–371, 2006–Ohio–2306, ¶ 22. Given that legislative determination, the Supreme Court of Ohio in *Vega* concluded that

6

"an accused may not make a general attack upon the reliability and validity of the breath testing instrument" but "may * * * attack the reliability of the specific testing procedure and the qualifications of the operator." *Id*. at 189–90; *Luke* at ¶ 25–26. . . .

Appellant's counsel questioned Officer Scott during cross-examination about the effect that a sample's temperature would have on a test result. The officer stated that if a person's temperature is higher than a certain level, it will raise the result of the sample. (Tr. 393.) The officer did not know the precise impact an elevated temperature would have on the test result. Officer Scott also testified the machine would provide an error message if the body temperature was too high. (Tr. 393.) At this point in his testimony, the state objected, arguing that the questions were general attacks on the reliability of the testing machine that are prohibited under *Vega*. Appellant's counsel ceased the line of questioning but asked the trial court for permission to make a proffer of the questions he sought to ask. The trial court granted his request.

During the proffer, appellant's counsel again asked Officer Scott about the effect a person's temperature would have on a sample result. Again, Officer Scott replied that the machine would give an error message if the sample temperature exceeded the acceptable range of value. (Tr. 434.) Officer Scott acknowledged that appellant reported to the police that night that he had the flu and that someone with a flu could have an elevated temperature. However, Officer Scott testified that he did not know how an elevated temperature would affect appellant's individual breath test that evening. (Tr. 439.)

Appellant's counsel also asked Officer Scott to identify the location of appellant's cell phone during the breath test that morning. Based upon Officer Scott's testimony, it is unclear whether appellant's cell phone was in the room when Officer Scott administered the breath test. (Tr. 443–44.) The trial court ultimately refused to allow appellant's proffered questions. . . .

A trial court has the discretion to limit the scope of cross-examination taking into account the particular facts of a case. *State v. Treesh*, 90 Ohio St. 3d 460, 480–81 (2001); *State v. Hodge*, 10th Dist. No. 04AP-294, 2004-Ohio-6980, ¶10. Therefore, an appellate court will not disturb a trial court's limits on the scope of cross-examination unless the trial court has abused its discretion. *State v. Casner,* 10th Dist. No. 10AP–489, 2011–Ohio–1190, ¶ 11; *Hodge* at ¶ 10. Although an abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision, *State v. Beavers,* 10th Dist. No. 11AP–1064, 2012–Ohio–3654, ¶ 8, we note that no court has the authority, within its discretion, to commit an error of law. *State v. Beechler,* 2d Dist. No. 09–CA–54, 2010–Ohio–1900, ¶ 70.

Appellant contends that the trial court erred by prohibiting his questions because they concerned the specific testing procedure Officer Scott used for his breath

test. Regardless of whether appellant's proffered questions address the general reliability of the machine used that morning or the specific testing procedure utilized, the trial court did not abuse its discretion by refusing to allow the questions because appellant did not lay the proper foundation for such questions. *State v. Sabo,* 10th Dist. No. 04AP–1114, 2006–Ohio–1521, ¶ 22 (noting that even if challenge was to specific testing procedures, trial court properly excluded testimony based on lack of evidentiary support).

Specifically, Officer Scott testified during the proffer that he did not know how much an elevated temperature would affect appellant's test results. *Casner* at ¶ 14–15 (no abuse of discretion in limiting cross-examination where witness lacked knowledge to testify about issue). Nor was there any evidence that appellant had an elevated temperature when he took the alcohol breath test. Given the lack of a sufficient evidentiary basis to challenge appellant's individual breath test, the trial court did not abuse its discretion when it prohibited appellant's proffered questions.

To the extent that appellant sought to question the officer about the location of appellant's cell phone (which could arguably cause radio frequency interference that can interfere with the accuracy of breath testing equipment),[FN] his argument is premised on the allegation that the cell phone was in the room when the test was conducted. A review of Officer Scott's testimony, however, reveals that the location of the cell phone during the test is unclear. We note, however, that Officer Scott testified he is "very clear to make sure there are no radio signals there." (Tr. 444.) It is appellant's burden to come forward with evidence indicating that prohibited radio interference occurred at the relevant time. *Greenville v. Holzapfel,* 85 Ohio App.3d 383, 389 (2d Dist.1993). Appellant did not present any specific evidence that the cell phone was in the room where the test was conducted.

> FN. *Greenville v. Holzapfel*, 85 Ohio App. 3d 383, 386 (2d Dist. 1993).

For these reasons, the trial court did not abuse its discretion by limiting appellant's cross-examination of Officer Scott because appellant failed to lay the proper foundation for the questions he claims were erroneously prohibited. Accordingly, we overrule appellant's . . . assignment of error. . . .

*Horton*, 2014 WL 5306839, at *5–7.

To the extent that Petitioner raises an issue of state evidentiary law, that issue does not provide a basis for relief under 28 U.S.C. § 2254(a). As a general matter, an error under state law, especially the improper admission of evidence, does not provide a basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Giles v. Schotten*, 449 F.3d 698, 704 (6th

8

Cir. 2006). To be entitled to habeas relief, a petitioner must demonstrate that an evidentiary ruling violated more than a state rule of evidence or procedure. "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994). In other words, " '[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.' " *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006) (citing *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002)). A state court evidentiary ruling does not violate due process unless it "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Giles*, 449 F.3d at 704 (citing *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001)). Consequently, this Court's review is limited to whether Petitioner can demonstrate a violation of his federal constitutional rights. *Haliym v. Mitchell*, 492 F.3d 680, 700 (6th Cir. 2007).

Petitioner seeks to elevate his evidentiary claim to a federal-constitutional level by contending that the limitations imposed upon the cross examination of Officer Scott unconstitutionally denied him the rights to present a defense[2] and to confront the witnesses against him. The Sixth Amendment's Confrontation Clause guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial. *Illinois v. Allen,* 397 U.S. 337, 388, (1970). A criminal defendant's right to cross-examine witnesses against him, however, is not unlimited. "Trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things,

---

[2] The right to present a defense flows, in part, from the Sixth Amendment's Compulsory Process Clause and relates to an accused's right to compel a witness' presence in the courtroom. *Ferensic v. Birkett*, 501 F.3d 469, 475 (6th Cir. 2007). Nothing in the record indicates that Petitioner was prevented from calling witnesses.

9

harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986). The Confrontation Clause thus guarantees the opportunity for effective cross-examination, not cross-examination in whatever way or to whatever extent the defendant may desire. *Id.* (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985)); *see also Norris v. Schotten,* 146 F.3d 314, 330 (6th Cir. 1998) (no Confrontation Clause violation where relevance of questions prohibited on cross-examination is unclear and the risk of prejudice real) (citations omitted).

Where a trial court limits the extent of a criminal defendant's cross-examination, but does not bar it completely, the trial court is afforded wider latitude. *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2007) (quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)). Under such circumstances, the test is "whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Id*. (citing *Dorsey v. Parke*).

A Confrontation Clause violation, where established, is subject to a harmless error analysis. "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht v. Abrahamson,* 507 U.S. 619 (1993) ]." *Fry v. Pliler,* 551 U.S. 112, 122–23 (2007). "To resolve the harmless error issue, [a court] must ask whether the constitutional violation 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Vasquez v. Jones,* 496 F.3d 564, 575 (6th Cir. 2007) (quoting *Brecht,* 507 U.S. at 623). This inquiry involves consideration of several factors including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the

extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall,* 475 U.S. at 673, 684; *see also Earhart v. Konteh,* 589 F.3d 337, 345–46 (6th Cir. 2009) (applying the *Van Arsdall* factors under the *Brecht* standard). "If the constitutional error had no material effect, the verdict must stand. However, if the court has 'grave doubts' whether the error had a substantial or injurious effect or influence in determining the jury's verdict," the court must grant the petitioner's writ. *Jensen v. Romanowski,* 590 F.3d 373, 379 (6th Cir. 2009) (citing *O'Neal v. McAninch* 513 U.S. 432, 435–36 (1995); *Stallings v. Bobby,* 464 F.3d 576, 582 (2006)).

Petitioner asserts that the trial court relied upon a flawed interpretation of the Ohio Supreme Court's opinion in *Vega* and its progeny when it excluded cross-examination testimony from Officer Scott. Relatedly, Petitioner challenges the constitutionality of the Ohio Supreme Court's ruling in *Vega*. In *Vega,* the Ohio Supreme Court held that, although a defendant may challenge the qualifications of a breath test administrator or the accuracy of a specific breath test, a defendant may not challenge the general accuracy of breath testing procedures that comply with methods approved by the Ohio Director of Health. *Vega*, 12 Ohio St.3d at 186. The Sixth Circuit has upheld the constitutionality of *Vega* in the context of a Confrontation Clause challenge. *Miskel v. Karnes*, 397 F.3d 446, 452 (6th Cir. 2005). This Court is bound by that determination.

Petitioner contends that the trial court misinterpreted and misapplied *Vega* in such a way as to violate his confrontation rights. The state appellate court, however, did not rely on *Vega* when it affirmed the judgment of the state trial court.[3] Instead, the state appellate court

---

[3] This Court looks to the determination made by the state appellate court. *See Stewart*, 468 F.3d at 347–48 (explaining that "the inquiry is not whether the state trial court abused its discretion . .

concluded that the proffered evidence lacked a proper foundation. *Horton*, 2014 WL 5306839, at *5–7. Limiting cross examination where a defendant fails to establish an adequate foundation for its admission under state law does not violate the Confrontation Clause. *Dell v. Straub,* 194 F. Supp. 2d 629, 644 (E.D. Mich. 2002) (citing *Reddick v. Haws,* 120 F.3d 714, 717 (7th Cir.1997) (requiring a defendant to lay a foundation for the admissibility of certain evidence does not violate the Confrontation Clause)); *see also DiBenedetto v. Hall,* 272 F.3d 1, 11 (1st Cir. 2001) (explaining that the right of confrontation does not permit "fishing expeditions," and that a court may prohibit cross-examination on a particular subject "if the party is unable to lay a proper evidentiary framework."); *Dorsey,* 872 F.2d at 168 (limiting cross examination of prosecution witness about his mental stability did not violate Confrontation Clause where record contained no factual basis for such questioning).

The state appellate court noted that, during *voir dire* outside the presence of the jury, Officer Scott testified that he did not know how much an elevated temperature would affect the results of a breath test. *Horton*, 2014 WL 5306839, at *6. The state appellate court further noted that the record contained no evidence that Petitioner had an elevated temperature when he took the breath test. *Id.* Accordingly, the state appellate court determined that the testimony about the impact of an elevated temperature on the breath test results lacked a proper evidentiary foundation. *Id*. The record supports that determination. Specifically, Officer Scott testified that he was not a breath testing expert, *Trial Transcript* (ECF No. 8-2, PageID # 477), and that he did not know how an elevated temperature would have impacted Petitioner's particular breath test,

---

. the inquiry is whether the state court of appeals' decision that the state trial court did not abuse its discretion . . . was contrary to or an unreasonable application of federal law").

*Trial Transcript* (ECF No. 8-2, PageID # 511.)[4] In addition, although Officer Scott testified that a flu could have raised Petitioner's temperature, and that Petitioner indicated that he had the flu or a cold, Officer Scott did not testify that Petitioner had an elevated temperature. *Trial Transcript,* (ECF No. 8-2, PageID # 502, # 511). Indeed, as the state appellate court noted, the record is devoid of evidence, proffered or otherwise, that Petitioner in fact had an elevated temperature. On this record, this Court cannot conclude that the exclusion of the cross-examination testimony at issue rose to the level of a constitutional violation. *See Dorsey,* 872 F.2d at 168; *Bui v. DiPaolo*, 170 F.3d 232, 243, 244-45 (1st Cir. 1999) (limiting cross examination of prosecution witness did not violate Confrontation Clause; petitioner's proposed questions were not sufficiently probative of his particular theory of bias where petitioner provided no evidentiary foundation for critical elements of his bias theory).

Similarly, the state appellate court noted that Officer Scott's testimony about the location of Petitioner's cell phone was unclear and thus questions about the impact that Petitioner's cell phone may have had on the breath test also lacked a proper evidentiary foundation. *Horton*, 2014 WL 5306839, at *6. The record also supports that conclusion. Officer Scott did not testify about the impact that a cell phone can have on a breath machine or the distance between Petitioner's cell phone and the breath machine. At most, Officer Scott testified that Petitioner's cell phone was on a table in the "breath room." *Trial Transcript,* (ECF No. 8-2, PageID # 515–16). Officer Scott did not clearly describe where the cell phone was in relation to the breath

---

[4] Officer Scott also did not testify about the precise relationship between an elevated temperature and breath test results. Officer Scott testified that the temperature of a breath sample is "important," and that when the temperature (presumably of a breath sample) is higher than a certain level, it can raise breath test results. *Trial Transcript* (ECF No. 8-2, PageID # 465, PageID # 505.) There was no evidence, proffered or otherwise, as to how high a breath sample temperature had to be in order to raise breath test results. In addition, Officer Scott did not know how much breath test results could be raised by a temperature that exceeded a "certain level." (*Id.* at PageID # 466).

machine in the breath room, or if a cell phone emits radio frequency waves that can interfere with a breath test at that distance. Indeed, as the state appellate court noted, Officer Scott affirmatively testified that he is "very clear to make sure there are no radio signals" when administering breath tests. (*Id.*) On this record, this Court cannot conclude that the exclusion of the testimony rose to the level of a constitutional violation. *Dorsey,* 872 F.2d at 168; *Bui*, 170 F.3d at 243, 244-45.

Petitioner attempts to analogize this case to *Knapke v. Hummer*, No. 2:10-cv-485, 2012 WL 1883854 (S.D. Ohio May 21, 2012). In *Knapke*, this Court found that a state appellate court erred when it affirmed a trial court's decision to prohibit defense counsel from cross examining a police officer about the procedures that he followed when administering a specific breath test, including whether the officer ran a diagnostic test on a breath machine prior to administering the test. *Id* at *9. In that case, habeas relief was warranted because the state appellate court erroneously concluded that proffered cross examination questions constituted a challenge to the general reliability of breath testing in violation of *Vega*, when in fact, those questions were probative of the reliability of the specific breath test at issue. *Id.* *4. In this case, to the contrary, the state appellate court determined that the proffered cross examination was not probative of the reliability of the specific breath test at issue because the questions lacked a proper evidentiary foundation. *Horton*, 2014 WL 5306839, at *5–7. The record fairly supports this evidentiary ruling. Consequently, the cases are distinguishable.

This Court further notes that the trial court did not completely preclude Petitioner from cross examining Officer Scott about the reliability of the specific breath test that he administered to the Petitioner. Petitioner was permitted to cross examine Officer Scott about his training in the use of the breath testing machine, *Trial Transcript* (ECF No. 8-2, PageID # 464–65); whether

14

Officer Scott complied with rules mandating a 20 minute observation period when administering the breath test, (*id*. at PageID # 470–71); ways that breath samples can be contaminated, (*id*. at PageID # 472–73); and diagnostic tests used to determine if the breath testing machine was functioning properly, (*id*. at PageID # 477–78).

Moreover, the limits imposed on the Petitioner's ability to cross examine Officer Scott were harmless under the strict standard applicable to habeas cases. In view of the evidence actually admitted in the case, including the extensive cross examination that was otherwise permitted, and the general strength of the prosecution's case, this Court cannot conclude that any alleged evidentiary error had a substantial or injurious effect on the jury's verdict. *Van Arsdall*, 475 U.S. at 684. Nor can this Court conclude that the state appellate court contravened or unreasonably applied federal law when rejecting Petitioner's claim, or that its decision constituted an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §2254(d)(1), (2).

For these reasons, the Magistrate Judge concludes that Petitioner is not entitled to habeas relief.

## Recommended Disposition

WHEREUPON, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo*

15

determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

       s/ *Elizabeth A. Preston Deavers*
       Elizabeth A. Preston Deavers
       United States Magistrate Judge